IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ERICK ERNESTO MARTINEZ-RAMOS, | | |
| Petitioner, | | **8:26CV273** |
| vs. | | |
| MARKWAYNE MULLIN, in his official capacity, Secretary, U.S. Department of Homeland Security; PETER BERG, in his official capacity ICE Field Office Director Detention and Removal; and WARDEN, McCook ICE IGSA; | | **MEMORANDUM AND ORDER** |
| Respondents. | | |

This matter is before the Court on Petitioner Erick Ernesto Martinez-Ramos' petition for a writ of habeas corpus. (Filing No. 1). Martinez-Ramos, a noncitizen detained by U.S. Immigration and Customs Enforcement, alleges his detention is unlawful because he has not received an individualized custody determination. But for the reasons set forth below, his petition will be denied.

## BACKGROUND

Martinez-Ramos is a native and citizen of El Salvador. (Filing No. 1 at 4-5). In January 2013, he entered the United States near the Hidalgo, Texas port of entry as an "unaccompanied juvenile." (Filing No. 10 at 6). U.S. Border Patrol found him on a ranch near Sarita, Texas three days later, detained him, and transported him to a Border Patrol office for "administrative processing." (Filing No. 7 at 3).

Once there, Martinez-Ramos was interviewed by U.S. Immigration and Customs Enforcement (ICE) officers. He admitted he was "from El Salvador" and did not have

"immigration documents that would allow him to enter or remain in the United States." (Filing No. 10 at 6). He told the officers he entered the United States to live with his mother at her home in Nebraska. (Filing No. 10 at 6). Given his admissions about his lack of immigration status in the United States, ICE issued Martinez-Ramos a Notice to Appear initiating removal proceedings against him. (Filing No. 7 at 4). ICE then released him into the United States on an Order of Recognizance.  (Filing No. 7 at 4).

Martinez-Ramos sought relief from removal in those proceedings. He applied for asylum (Filing No. 1-3) and received work authorization through March 2023. (Filing No. 7 at 4); (Filing No. 1-4). "[M]ultiple continuances" dragged Martinez-Ramos' case out until May 2022, when the immigration judge dismissed it without prejudice "[a]t [the] request of the parties and as an exercise of prosecutorial discretion by" the government. (Filing No. 7 at 4).

Martinez-Ramos thus remained in the United States. (Filing No. 1 at 6). In October 2024, he was charged with several traffic-related offenses in the County Court of Douglas County, Nebraska. (Filing No. 7 at 4). Martinez-Ramos appeared at the Douglas County Courthouse for a hearing in that case in March 2026. (Filing No. 1 at 6). ICE officers knew about that hearing and arrested Martinez-Ramos at the courthouse. (Filing No. 1 at 6). ICE also served him a new Notice to Appear initiating removal proceedings. (Filing No. 1 at 6-7).

Martinez-Ramos sought release from detention on bond at the outset of those new proceedings. An immigration judge denied his request, reasoning she lacked "authority to grant bond" under *Avila v. Bondi*, 170 F.4th 1128, 1132 (8th Cir. 2026) and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). (Filing No. 1-5 at 1). Put differently, Martinez-Ramos was "not bond eligible," in the immigration judge's view, because he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (Filing No. 1-5 at 1). Martinez-Ramos has therefore stayed in detention at the "McCook ICE IGSA" in McCook, Nebraska. (Filing No. 1 at 3).

In response to the immigration judge's decision, Martinez-Ramos petitioned for habeas relief. (Filing No. 1). He argues his "re-arrest" without a "meaningful opportunity to contest the detention" violates his procedural and substantive due process rights. (Filing No. 1 at 3, 13). To remedy those violations, he seeks immediate release or, in the alternative, an order directing the Respondents to provide him a "fair bond redetermination hearing before an Immigration Judge whereby the government bears the burden." (Filing No. 1 at 16).

2

The Court entered an order to show cause (Filing No. 3) directing Martinez-Ramos to serve the Respondents and ordered the Respondents to file a return on the petition within three business days of service to show cause why the petition should not be granted. The Federal Respondents[1] did so (Filing No. 5) and Martinez-Ramos replied[2] (Filing No. 8) in support of his petition. The Court then held a telephone conference with the parties (Filing No. 11) to discuss, among other things, whether a hearing was necessary. The parties both answered in the negative, so the Court deems the matter submitted on their written arguments. *See* 28 U.S.C. § 2243.

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under 28 U.S.C. § 2241, a district court can grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Martinez-Ramos bears the burden to show his custody is unlawful. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

The Federal Respondents argue Martinez-Ramos cannot make that showing. From their perspective, Martinez-Ramos is an "applicant for admission," so his mandatory detention under 8 U.S.C. § 1225(b)(2)(A) is legally authorized. (Filing No. 5); *see Avila*, 170 F.4th at 1138. For his part, Martinez-Ramos acknowledges *Avila* settled "the statutory source of [his] detention." (Filing No. 8 at 3); *see* § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained*" for removal proceedings)

---

[1] The Federal Respondents are all but the Warden of the McCook ICE IGSA. The Warden takes no position "on the substantive issues raised in the Petition" or whether "Petitioner's writ should or should not be granted." (Filing No. 14 at 2-3).

[2] Martinez-Ramos' request for leave to file his reply out of time (Filing No. 8 at 1) is granted. The reply is deemed timely submitted.

(emphasis added). But *Avila* left open, he says, the "independent constitutional question" of whether his *re-arrest* contravened due process. (Filing No. 8 at 3). He relies on cases where courts found noncitizens who were detained at the border, released, and then re-detained had a liberty interest in their continued release. (Filing No. 1 at 9); *see, e.g., Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017).

This Court too has recognized the constitutional problems in those kinds of cases. *See Sandhu v. Mullin*, 2026 WL 1146643, at *5 (D. Neb. Apr. 28, 2026). When, in the course of a single proceeding, the government detains, conditionally releases, and then re-detains a noncitizen without any suggestion the noncitizen violated the terms of their conditional release, the due process issues are evident. *See id.* ("To revoke [a noncitizen's] conditional parole arbitrarily—without process and with no allegation of changed circumstances or violation by [the noncitizen]—is fundamentally unfair.") (citation modified).

But the facts here are different. Martinez-Ramos' first removal proceedings were dismissed without prejudice in 2022. (Filing No. 1 at 2). That dismissal swept away the order of recognizance he was released on in 2013. (Filing No. 7 at 4). And the dismissal *without prejudice* served—or should have served—as notice to Martinez-Ramos that new removal proceedings could be brought against him at any time. Put differently, when Martinez-Ramos was detained in March 2026, there was no "implicit promise" made by the government that his release would be revoked "only if [he] fail[ed] to live up to" some set of conditions. *Sandhu,* 2026 WL 1146643, at *3.

To be sure, the Court doubts the government could legally manipulate removal proceedings to secure mandatory detention. Dismissing removal proceedings where a noncitizen was entitled to release merely to bring a new case subjecting the noncitizen to mandatory detention, for example, would seem problematic. *See, e.g., Nava Noriega v. Warden of McCook Detention Center, et al.,* 2026 WL 1972271, at *2 (D. Neb. July 8, 2026) ("[T]he Government is not allowed to change horses midstream."); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50 (1983) ("[C]ourts may not accept . . . post hoc rationalizations for agency action," and "an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). But there is no suggestion that is what happened here. Instead, as the Federal Respondents explained, prosecutorial discretion and the parties' joint request was the reason for the dismissal. A shift in immigration enforcement priorities—and the government's belief it can now prove

4

Martinez-Ramos is subject to removal—was the reason Martinez-Ramos was detained in 2026. The dismissal of Martinez-Ramos' prior removal proceedings without prejudice allowed the government to take that course.

Martinez-Ramos' reliance on re-arrest cases is therefore unavailing. And his claims, evaluated under the frameworks established by binding Supreme Court and Eighth Circuit precedent, fail.

Start with procedural due process. There is no question noncitizens like Martinez-Ramos are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.,* 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306, (1993)). But his "detention during" those proceedings is "a constitutionally valid aspect of the deportation process." *Demore v. Kim,* 538 U.S. 510, 523 (2003). In *Demore,* the Supreme Court considered a due process challenge to a mandatory detention statute similar to § 1225(b)(2)(A), § 1226(c). In rejecting it, the court reaffirmed its "longstanding view that the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526; *see also Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation."). The reason, the court explained, is "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522.

Still, invoking the three-part test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), Martinez-Ramos argues his detention violates his procedural due process rights. But *Mathews* is of no help to him here. While recognizing that "deciding what process is due ordinarily requires a form of interest balancing," the Eighth Circuit has held that cases like *Demore* "have already done whatever balancing is necessary" and "leave no room for a multi-factor 'reasonableness' test." *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024); *see Demore,* 538 U.S. at 528 (explaining that, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means," so it is sufficient if "detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings"). There is a "bright-line rule" instead: "the government can detain an alien for as long as deportation proceedings are still '*pending*.'" *Banyee,* 115 F.4th at 933 (quoting *Demore,*

538 U.S. at 527)). For Martinez-Ramos, they are, so his detention under § 1225(b)(2)(A) is constitutional.

One of Martinez-Ramos' other arguments merits further discussion. Throughout his petition, he asserts a right to an "individualized custody determination" to determine whether he is a danger or flight risk. (Filing No. 1 at 12). But the Supreme Court has repeatedly upheld the constitutionality of *categorical*, mandatory detention of certain classes of noncitizens. *See, e.g., Demore,* 538 U.S. at 531; *Carlson v. Landon,* 342 U.S. 524, 541-42 (1952) (rejecting claims of noncitizens deemed "deportable because of their participation in Communist activities" that they were entitled to be released from detention if they did not pose a flight risk); *Reno v. Flores,* 507 U.S. 292, 313 (1993) (upholding mandatory detention of a class of noncitizen juveniles because "reasonable presumptions and generic rules" are not necessarily impermissible exercises of Congress' traditional power to legislate with respect to noncitizens).

In those cases, the government could continue to hold the detainees simply "by reference to the legislative scheme." *Banyee,* 115 F.4th at 932. So too here. Even though Martinez-Ramos has not been individually found to be a flight risk or dangerous, his detention is constitutional. *See Demore*, 538 U.S. at 524 (emphasizing that "the aliens in *Carlson* were not flight risks" and "had not been found individually dangerous"). Whether or not an immigration judge would find Martinez-Ramos to be a flight risk or dangerous, § 1225(b)(2)(A) *mandates* his detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."). What is more, Martinez-Ramos has no procedural right to prove facts at a hearing—like lack of flight risk or dangerousness—that the law renders irrelevant to his detention. *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7-8 (2003).

In sum, Martinez-Ramos' temporary detention is statutorily authorized by § 1225(b)(2)(A). *See Banyee,* 115 F.4th at 932 ("[W]hat matters is that detention pending deportation 'ha[s] a definite termination point'—deporting or releasing the" noncitizen) (quoting *Demore,* 538 U.S. at 528-29). And cases like *Demore* and *Banyee* establish that Martinez-Ramos' detention does not violate his procedural due process rights. His detention is a constitutionally valid aspect of the deportation process. *See Demore*, 538 U.S. at 523.

Martinez-Ramos' substantive due process claim fares no better. The Fifth Amendment's guarantee of "due process of law" includes a  substantive component forbidding the government from infringing certain "fundamental" liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Reno,* 507 U.S. at 302.

Here, Martinez-Ramos says the government's decision to "re-arrest and detain" him "without any individualized determination that detention is necessary to serve a legitimate civil purpose, is arbitrary and excessive in relation to the government's stated interests." (Filing No. 1 at 14). The Court has already explained why parts of that argument fail—he is not constitutionally entitled to an individualized detention determination. *Demore,* 538 U.S. at 531; *see* § 1225(b)(2)(A).  Beyond that defect, the Supreme Court has held that "'[s]ubstantive due process' analysis must begin with a careful description of the asserted right[.]" *Reno,* 507 U.S. at 302. But Martinez-Ramos does not offer such a "careful description" of his asserted right. Ostensibly, he asserts a right to remain at large in this country during his removal proceedings if an immigration judge would find he does not pose an individualized flight risk or danger. "For decades, however, the Supreme Court has held that immigrants do not have any right—let alone a fundamental right— to be present in the country." *Lopez-Campos v. Raycraft*, 175 F.4th 713, 760 (6th Cir. 2026) (Murphy, J., dissenting) (citing *Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893)).

Martinez-Ramos also asserts his "detention is not reasonably related to ensuring his appearance [during removal proceedings]" given his "substantial ties to the United States." (Filing No. 1 at 14). But he has not, in the Court's view, shown that to be so. In *Demore,* the Supreme Court recognized detention of "deportable" noncitizens "pending their removal proceedings" *categorically* "serves the purpose of preventing [removable noncitizens] from fleeing prior to or during their removal proceedings, thus increasing the chance that" all "will be successfully removed." 538 U.S. at 528. True, the Supreme Court has made clear that detention to punish noncitizens who have not committed crimes is unconstitutional, *Wong Wing,* 163 U.S. at 235, just as it has suggested the keeping noncitizens detained when removal is only "a remote possibility" would pose a constitutional problem, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). But there is no evidence here that Martinez-Ramos is detained for either of those reasons.

Martinez-Ramos' substantive due process claim therefore also fails. He has not shown his detention—as difficult and frustrating as it is—violates the Constitution, laws, treaties of the United States, 28 U.S.C. § 2241(c)(3), so his habeas petition will be denied.

Accordingly,

**IT IS ORDERED:**

1.  Petitioner Erick Ernesto Martinez-Ramos' petition for a writ of habeas corpus (Filing No. 1) is denied.
2.  A separate judgment will be entered.

Dated this 4th day of August, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge

8